UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES R. MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-182-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DANIEL AKERS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of three pending motions.  Defendant Joyce Puckett has filed a motion to dismiss the claims against her.  [Record No. 44]  Defendants Kendrick and Wilson also have filed a motion to dismiss the claims asserted against them. [Record No. 47]  Plaintiff James May has not responded to either motion, and the time to do so have passed. Instead, May has filed a motion for leave to file his Second Amended Complaint.  [Record No. 53]  For the reasons explained below, the Court will grant May's motion to amend his Complaint, grant Kendrick's motion to dismiss the claims asserted against him, and deny the motions to dismiss filed by Wilson and Puckett.

**I.**

May indicated in his original Complaint that, while he was confined at the Lee Adjustment Center ("LAC"), he fell when the chair in which he was sitting collapsed.  May's shoulder was dislocated and broken as a result.  May alleged that prison officials knew that several chairs in the prison had collapsed previously but had failed to fix the problem or warn

inmates of the danger.  May further contended that Defendant Puckett, a nurse, did not immediately send him to have an x-ray taken of his shoulder.

May claims that a physician at the University of Kentucky Medical Center ("UKMC") later told him that Puckett was not qualified to provide medical care and should not have told May to keep his arm in a sling.  May sued the defendants in their individual and official capacities for violation of his rights under the United States and Kentucky Constitutions.  He sought damages as well as an order directing further medical care as directed by the UKMC physician.  [Record No. 1]

May later moved to amend his complaint to include additional allegations and claims. Specifically, he contended that Puckett's actions also amounted to medical malpractice under Kentucky law.  May further alleged for the first time that LAC officials conspired to destroy the Occurrence Report regarding his injury.  [Record No. 31]  The defendants did not object to the proposed amendment, and the Court granted May's motion to file his First Amended Complaint.  [Record No. 43]

However, May's First Amended Complaint [Record No. 32] did not include many of the allegations and claims he set forth in his original filing.  And because the First Amended Complaint contained only limited allegations against them, Defendant Puckett again moved to dismiss the claims against her [Record No. 44], and Defendants Kendrick and Wilson followes suit [Record No. 47].  The Court extended May's response period for each motion and directed him to file a response to the first motion by November 22, 2021, and to the second motion by December 3, 2021.  [Record Nos. 45, 49]

As noted above, May did not respond to either motion.  Instead, May filed a motion to vacate the Order granting his motion to amend his Complaint.  He explained that he "believed that he could add additional claims to his original complaint without affecting the claims within the original [complaint]."  [Record No. 51] The Court denied the motion because May's misunderstanding of the law does not provide grounds for relief.  However, the Court noted that May could file a renewed motion to amend his Complaint and tender a new comprehensive pleading.  [Record No. 52]

May moved to file his Second Amended Complaint two weeks later.  The tendered Complaint essentially includes allegations from his original Complaint and his First Amended Complaint.  It also expands upon his allegations against nurse Puckett, reiterates his demand for damages, but drops his request for mandatory injunctive relief in the form of medical treatment.  [Record No. 53]

## II.

The Court first considers May's recent motion to amend his Complaint a second time. Court approval is required following after a first amendment of right, but leave to amend should be "freely" granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Sixth Circuit has "emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint."  *Newberry v. Silverman*, 789 F. 3d 636, 645 (6th Cir. 2015) (cleaned up).  Leave should be granted unless permitting amendment would be futile, the plaintiff has improperly or unduly delayed in seeking amendment, or the defendant would suffer undue prejudice if the amendment is permitted. *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Still, "a party must

act with due diligence if it intends to take advantage of the Rule's liberality." *Church Joint Venture, L.P. v. Blasingame*, 947 F. 3d 925, 934 (6th Cir. 2020).

Taking these considerations into account, the Court will grant May's motion to again amend his Complaint.  May, who proceeds *pro se*, moved to amend his Complaint promptly after learning that most of his original allegations and claims had been superseded upon the filing of his First Amended Complaint. [Record No. 51 at 2; Record No. 52]  Thus, the Court concludes that May has acted with the diligence required by the rule.  While permitting the amendment will cause some delay, that delay is not "undue."  *Cf. Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018); *Doe v. Michigan State Univ.*, 989 F.3d 418, 426 (6th Cir. 2021).  Further, May's motion to amend has been filed relatively early in the case, discovery has not yet commenced, and the factual allegations and legal claims in the proposed amendment are not profoundly different from those found in his earlier pleadings.  The Defendants, therefore, will not suffer undue prejudice from the amendment.  *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016).

## III.

As noted, May has not filed timely responses to any of the pending motions to dismiss. And he failed to do so notwithstanding clear and repeated cautions from the Court that such conduct could result in dismissal of the claims in question for failure to prosecute.  [Record Nos. 29, 45, 49 (*citing* Fed. R. Civ. P. 41(b); *Bowles v. City of Cleveland*, 129 F. App'x 239, 241-42 (6th Cir. 2005))]  May's motion to amend his Complaint does not relieve him of the responsibility to file a timely and substantive response to the pending motions.  Nonetheless, the Court will not dismiss the claims in question on that basis but May is cautioned that further

-4-

failures to adhere to applicable procedural rules will likely result in adverse consequences. *McKinney v. Roadway Express, Inc.*, 341 F.3d 554, 558 (6th Cir. 2003) ("Ordinary civil litigants proceeding *pro se*, however, are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

## IV.

Defendant Puckett asserts three distinct grounds for dismissal of the various claims asserted against her. Puckett first challenges the sufficiency of the allegations with respect to May's claim in her individual capacity.[1] Puckett argues that May's allegations are conclusory and are not sufficient to state a claim. She also contends that May received some medical treatment and that his allegations indicate no more than a difference of opinion regarding its sufficiency or appropriateness. [Record No. 25 at 4-5; No. 44 at 4-5] But these arguments are unavailing.

To state a viable claim of deliberate indifference under the Eighth Amendment, the plaintiff must allege facts sufficient to indicate an objectively serious medical condition, that the defendant was subjectively aware of the condition, and that the defendant consciously disregarded the risk to the inmate's health. *Jones v. Muskegon Cty.*, 625 F. 3d 935, 941 (6th Cir. 2010). Even before May amended his Complaint, he alleged that Puckett declined to order that an x-ray be taken immediately even though it was plain that May's shoulder was

---

[1] Puckett's argument is directed towards May's limited allegations against her in his First Amended Complaint. [Record No. 44 at 4-5] However, Puckett also addresses May's broader allegations made against her in the original Complaint by incorporating her first motion to dismiss [Record No. 25] by reference. [Record No. 44 at 5] May's Second Amended Complaint [Record No. 53-1] -- now the operative pleading in this case – further expands May's allegations against Puckett.

dislocated.  He also alleged that a few days later, she refused to send May to the hospital even after an x-ray taken at the prison showed that his shoulder was broken.  [Record No. 1 at 14-15]  May repeats these allegations in his Second Amended Complaint.  [Record No. 53-1 at 4-5]  He also alleges for the first time in his new pleading that additional prison officials and medical staff told him that he should be immediately be taken to the hospital for an x-ray and treatment.  And he contends that Puckett wrote a medical report which omitted the assessment of the prison's x-ray technician indicating that May should be re-assessed at a hospital.  *Id*. at 4-7.  These allegations are sufficient at the pleading stage to indicate an objectively serious medical condition and support an inference of deliberate disregard for May's health.  *Cf. Bays v. Montmorency Cty.*, 874 F. 3d 264, 268–69 (6th Cir. 2017).

Puckett's argument that May's allegations indicate no more than a disagreement about the best way to treat his injury is likewise unavailing, at least at this stage of the case.  It is true that, "[w]here a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).  However, in his Second Amended Complaint May asserts that "his left arm was black from his shoulder to his elbow" and that there was "bruising across his chest from the left side to the right chest midsection."  [Record No. 53-1 at 6]  He also alleges that several prison officials noticed the severity of his injury and undertook efforts on his behalf to get him taken to the hospital.  *Id*.  These allegations may support a later conclusion that the medical treatment provided was so patently insufficient as to constitute deliberate indifference.  *Alspaugh*, 643 F.3d at 169 ("[I]t is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all."); *see also Briggs v. Westcomb*, 801

F. App'x 956, 959–60 (6th Cir. 2020) ("both insufficient treatment and a delay in giving treatment may violate the Eighth Amendment" under *Alspaugh*).

Puckett also seeks dismissal of the official capacity claims against her. An "official capacity" claim against an employee is in actuality a claim against the agency that employs the individual. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008). May alleges that Puckett "is employed by WellPath Medical to provide medical treatment to inmates housed in state prisons in the Commonwealth of Kentucky through a contract with the Commonwealth of Kentucky." [Record No. 53-1 at 11] WellPath can be considered a state actor for purposes of Section 1983 if its actions are "fairly attributable to the State." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). A private person or company may meet that test if it performs a function traditionally handled by the government, or if its actions are closely dictated by government rules. *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020).

From these valid premises, Puckett argues that WellPath cannot be held liable unless she acted pursuant to a policy or custom of WellPath. [Record No. 44 at 6] This argument is misplaced because WellPath provides services to inmates through a contract with the state, not with a city, county, or municipality. *Cf. West v. Atkins*, 487 U.S. 42, 54 (1988) (private physician providing medical services to state prison inmates through contract with state qualified as a state actor under § 1983). The Supreme Court long ago held that *local* governing bodies can be held liable for constitutional torts committed by their employees, but only if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, in so

holding, the Supreme Court expressly stated that "[o]ur holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690, n.54. The additional pleading and proof requirements of *Monell* do not apply to claims against state officials sued in their official capacity. *Cf. D'Ambrosio v. Marino*, 747 F. 3d 378, 386 (6th Cir. 2014) (rejecting *Monell* claim against Ohio county based upon actions of prosecutor because he acted as an arm of the state, not the county). By extension, *Monell* does not apply to private enterprises that provide services under contract with the state.

Puckett finally seeks dismissal of May's pendent state law claims against her. Puckett first contends that May failed to comply with a requirement of Kentucky law that he attach proof that he exhausted his administrative remedies to his complaint. [Record No. 44 at 7-8] The pertinent state statute requires the inmate to exhaust administrative remedies prior to filing suit and "[to] attach to any complaint filed documents verifying that administrative remedies have been exhausted." Ky. Rev. Stat. 454.415(1),(3) (2010). However, this provision and others found in Chapters 451-456 of the Kentucky statutes govern practice and procedure in the Circuit Courts of Kentucky. They do not apply in federal courts located within the state. Indeed, given the statute's evident conflict with federal provisions addressing the same subject matter, *see* 42 U.S.C. § 1997e(a) (establishing a federal exhaustion requirement for prisoner claims) and *Jones v. Bock*, 549 U.S. 199 (2007) (holding that prisoner is not required to plead or demonstrate exhaustion in his complaint filed under Section 1983), a different conclusion would present serious concerns under the Supremacy Clause. The Court therefore interprets the Kentucky statute as applicable only to proceedings conducted in the Circuit Courts of Kentucky. *See Midgett v. KSP Head Chaplain*, No. 5:11-CV-P132-R, 2012 WL 4098991, at

-8-

*2 (W.D. Ky. Sept. 17, 2012) ("This action is a federal action brought under a federal statute, not under state law.  Thus, Ky.Rev.Stat. § 454.415 has no application to this case.  Rather, this action is governed by 42 U.S.C. § 1997e(a) ...").

The Court also rejects Puckett's brief assertion that May's allegations are not sufficient to state a claim for medical negligence under Kentucky law.  In such cases, the plaintiff must plead and prove "that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 690 (Ky. 2017).  Here, May alleges that Puckett failed to have an x-ray taken of his shoulder notwithstanding a clear dislocation of the shoulder, his expressions of pain, and readily-observable and severe bruising. He further claims that Puckett did not send him to a hospital for treatment, instead directing him only to wear a sling, after an x-ray taken at the hospital showed that his shoulder was broken.  [Record No. 53-1 at 4-5]  Given the liberal construction afforded to *pro se* pleadings, these allegations are sufficient at this juncture.

## VI.

Defendants Kendrick and Wilson have also moved to dismiss the claims against them in the First Amended Complaint.  [Record No. 47]  In the original Complaint, May alleged that both Kendrick and Wilson "knew the chairs legs would collapse and that several chairs had collapsed on inmates and some on staff but they failed to warn any inmates the chairs were defective and old and could cause harm ..."  [Record No. 1 at 15]  Wilson and Kendrick filed an Answer to the original Complaint.  [Record No. 27]  They notably did not move to dismiss it on the ground that these allegations were not sufficient to state a claim.

May's First Amended Complaint did not list Kendrick as a defendant and made no allegations against him. [Record No. 32] May's Second Amended Complaint again omits any reference to Kendrick. [Record No. 53-1] Kendrick moves to dismiss the First Amended Complaint, arguing that in the absence of any allegations against him the pleading fails to state a claim upon which relief may be granted. [Record No. 47 at 1-2] Because the Second Amended Complaint suffers from this defect as well, Kendrick is entitled to be dismissed from this action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"); *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

For his part, Wilson moves to dismiss May's First Amended Complaint because it omitted its prior allegations about him. Instead, the amended pleading stated only that Wilson had "removed numerous chairs [because their] legs had collapsed" and claimed without explanation that Wilson had conspired with others to conceal the danger presented by the chairs. [Record No. 32 at 2, 4] Wilson contends these allegations are conclusory and leave him to speculate regarding the nature of May's claims. [Record No. 47 at 3]

However, the Second Amended Complaint encompasses the more extensive allegations found in May's original Complaint. It includes his allegation that Wilson was aware of the danger presented by the chair and failed to address it or warn inmates. [Record No. 53-1 at 8-9] May further claims that Wilson conspired with others to destroy the Occurrence Report regarding his injury. *Id.* at 11-12. May also includes a new claim that Wilson's conduct amounted to negligence under Kentucky law. [Record No. 53-1 at 18-19] These allegations

-10-

are sufficient to proceed further at the pleading stage. *Reilly v. Vadlamudi*, 680 F.3d 617, 623-24 (6th Cir. 2012).

**VII.**

*Pro se* prisoner actions are exempt from certain requirements regarding initial disclosures and discovery established by Rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(a)(1)(B)(iv). Such actions are also exempt from the scheduling and time limitations set forth in Rule 16 of the Federal Rules of Civil Procedure. *See* LR 16.1(c); Fed. R. Civ. P. 16(b)(1). The Court, therefore, will assign this matter to a United States Magistrate Judge for pretrial management. Accordingly, it is hereby

**ORDERED** as follows:

1.     Plaintiff James May's "Motion to Amend Civil Complaint Pursuant to FRCP 15(a)(2)" [Record No. 53] is **GRANTED**.

2.     The Clerk of the Court is directed to file May's tendered Second Amended Complaint [Record No. 53-1]. It constitutes May's operative pleading in this matter.

3.     Defendant Joyce Puckett's Motion to Dismiss [Record No. 44] is **DENIED**.

4.     The Motion to Dismiss [Record No. 47] is **GRANTED** regarding the claims asserted against Defendant Brian Kendrick but **DENIED** regarding the claims asserted against Defendant Troy Wilson.

5.     Defendant Brian Kendrick is **DISMISSED** as a defendant in this action.

6.     Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions.

      7.      The Clerk is directed to assign this matter to a United States Magistrate Judge pursuant to standing orders of the Court.

      Dated:  December 14, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky