UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES R. MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-182-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DANIEL AKERS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Plaintiff James May filed a Second Amended Complaint in this matter on December 14, 2021.  [Record Nos. 55, 56]  He alleges that Defendant Joyce Puckett violated his rights under the United States and Kentucky Constitutions when she failed to properly care for injuries he sustained after a chair in which he was sitting collapsed.  [Record No. 56, pp. 9-10]  May also asserts that Defendant Puckett committed medical malpractice and acts of gross negligence in violation of state law.  [*Id.* at pp. 16-18]  Puckett has now moved for summary judgment on May's claims.  [Record No. 97]

Puckett's motion was referred to United States Magistrate Judge Hanley A. Ingram for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Ingram issued his Recommended Disposition regarding the motion on March 2, 2023. recommending that it be granted.  [Record No. 111]  The parties did not submit any timely objections to the Magistrate Judge's Recommended Disposition.

This Court makes *de novo* determinations regarding the portions of a magistrate judge's recommendation to which timely objections are made. 28 U.S.C. § 636(b)(1)(C).  However,

"[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Despite the absence of objections, the Court has reviewed the Magistrate Judge's Recommended Disposition and agrees that May has not demonstrated that a genuine issue of material fact exists regarding the claims in his Second Amended Complaint. Puckett's motion for summary judgment, therefore, will be granted.

## I. Background

May was incarcerated previously at the Lee Adjustment Center ("LAC") which contracts with Wellpath Care ("Wellpath") to provide healthcare services to inmates. [Record No. 56, p. 2] May was sitting in a plastic chair while using a kiosk to order food from the canteen at LAC on June 26, 2020. The chair suddenly collapsed and May fell on his shoulder. He claims that he "heard [his] arm break" as a result of the fall. [Record No. 100-1, p. 23] He requested to be sent to LAC's medical observation unit ("medical"), but a correctional officer told him to report to sick call instead. [*Id.*]

May was treated by RN Teresa Chaney during the sick call. [*Id.* at pp. 226-27, Record No. 101-3, p. 1] Chaney reported that the plaintiff reported "shoulder pain radiating down to [his] hand." [*Id.*] She referred him to Puckett, an APRN with Wellpath. [*Id.*] Puckett reported "swelling and tenderness to the AC joint" in May's left shoulder. [*Id.*] She noted that May had taken 975 milligrams of Tylenol and 400 milligrams of ibuprofen prior to their appointment. Puckett prescribed an additional 30-day supply of ibuprofen, a 3-day supply of tramadol, and administered an injection with 80 milligrams of Depo-Medrol for further pain

relief.  [*Id.*]  She also referred May for an x-ray "as soon as possible" and told him to "wear [a] sling at all times" and to "use ice packs as directed."  [*Id.*]

X-rays were taken of May's shoulder on July 1, 2020.  [Record No. 96, pp. 4-6]  The radiology report indicates that May suffered a "fracture involving humeral head with displacement."  [*Id.* at p. 6]  Puckett saw May immediately following his appointment with the x-ray technician.  [*Id.* at p. 7]  She reported that May claimed that his "pain [was] horrible," that he had "difficulty dressing and 'doing anything,'" and that his "inability to raise his arm" prevented him from completing the x-rays.  [*Id.*]  Puckett referred May to an orthopedic specialist and noted that the consultation should be expedited.  [*Id.*]  She further recommended that all other plans of care and medication be continued and authorized prison officials to deliver meals directly to May.  [*Id.*]

Puckett visited with May the following day and noted that he was not wearing his sling. [*Id.* at p. 8]  She advised that he could stay in medical for further observation, but May declined. [*Id.*]  May had a follow-up appointment with Puckett on July 6, 2020.  [*Id.* at p. 9]  Again, Puckett reported that May was not wearing his sling at the time and advised him to do so.  She also suggested that he stay in the medical unit, but he again rejected the recommendation.  [*Id.*]

Dr. Daniel Primm saw May on July 7, 2020, at UK Healthcare.  [*Id.* at pp. 10-11]  Dr. Primm reported that he "anticipate[d] nonoperative treatment" for May's injuries, recommended providing the plaintiff with a cuff and collar sling, and scheduled a follow-up appointment.  [Record No. 100-3, pp. 61-62]

May attended sick call again on July 9, 2020.  At this time, he requested to have meals delivered to his room and that he be allowed to wear sweatpants.  [Record No. 96, p. 13]  RN Jacqueline Craft consulted with Puckett during this visit and granted May's request for meal

delivery; however, she denied the plaintiff's request to wear sweatpants.  [*Id.*]  On July 14, 2020 Puckett ordered 800 milligrams of ibuprofen and 15 milligrams of meloxicam for him.  [*Id.* at pp. 14-15]

May again visited with Puckett on July 16, 2020.  [*Id.* at p. 16]  May attended this evaluation without a sling to stabilize his shoulder and arm.  [*Id.* at p. 16]  Puckett renewed his meal delivery authorization and again recommended continuing his "current plan of care and medications" until his next appointment with orthopedics.  [*Id.*]

May was seen for a second time by Dr. Primm on August 4, 2020.  [Record No. 100-3, pp. 61-63]  Primm reported that May continued to have pain in his left shoulder, but noted that the pain was lessening.  [*Id.* at p. 63]  The doctor's report stated that x-rays indicated "healing of the proximal humerus fracture with appropriate bony alignment."  [*Id.*]  Thus, Primm recommended "continued pain control with Tylenol and ibuprofen . . . range of motion exercises," and suggested a follow-up appointment in six weeks.  [*Id.*]

On August 7, 2020, Chancey prescribed additional ibuprofen and referred May to Puckett.  [*Id.*]  Puckett again treated May on August 13, 2020.  [*Id.* at p. 21]  She prescribed ibuprofen and renewed for an additional four weeks his authorization for meal delivery.  [*Id.*]  And Puckett once again noted that May was "without a sling at this time."  [*Id.*]

On August 14, 2020, May reported to medical with complains of chest pain.  [Record No. 101-28, p. 1]  RN Jacqueline Proffitt-Wright administered an EKG during this visit and gave May nitroglycerin and Flexeril for pain.  [*Id.*]  Proffitt-Wright reported that May "had what appeared to be muscle skeletal pain" and directed that he return to the general population.  [*Id.*]

- 4 -

Dr. Primm saw May a third time on September 29, 2020.  [*Id.* at p. 22]  After taking x-rays of May's shoulder, he reported that the images showed "[p]rogressive healing of humeral head fracture involving the greater tuberosity as well as the surgical neck."  [Record No. 100-3, p. 66]  The doctor further indicated that May claimed his pain was "much better" but his shoulder was "still stiff."  [Record No. 98-10, p. 6]  Primm referred May for physical therapy and scheduled a follow-up appointment.  [*Id.* at p. 7]  On October 12, 2020, Puckett referred the plaintiff to physical therapy "per [o]rtho[pedic] recommendations".  [Record No. 96, p. 64]  However, a release of responsibility form from November 5, 2020, indicates that May did not participate in physical therapy because he "didn't want to wait."  [*Id.* at p. 65]

May was transferred to Southeast State Correctional Complex ("SSCC") in January 2021.  [Record No. 100-1, p. 199]  During an appointment with NP Dannel Brown on March 2, 2021, May stated that he "had a fractured left shoulder and was seen by ortho at UK that he has not yet received follow up . . ."  [Record No. 96, p. 29]  On April 30, 2021, Brown reported that May refused to attend a follow-up appointment with orthopedics that had been scheduled because "he was unable to make the long trip without a bathroom break."  [*Id.*]

May transferred to the Little Sandy Correctional Complex ("LSCC") in April 2022.  [*Id.* at p. 55]  Thereafter, x-rays of his shoulder and arm were taken at St. Claire Regional Medical Center on June 15, 2022, at his request.  [*Id.* at pp. 67-69]  The x-rays indicated "deformity of the surgical neck and greater tuberosity compatible with the patient's history of prior fracture" and "old rib deformities in the left 4th and 5th ribs."  [*Id.* at p. 69]  May was again referred to physical therapy, but his treatment was suspended in July 2022 after LSCC experienced an outbreak of COVID-19.  [*Id.* at pp. 70-71]

Doctor Gary Bray reviewed the plaintiff's medical records on August 3, 2022.  [Record No. 98-12]  He opined that the treatment May received for his shoulder was "appropriate" and "d[id] not seem delayed."  [*Id.* at p. 3]  Dr. Bray further remarked that "it appears physical therapy [for the plaintiff] was not followed up on because of his recalcitrance."  [*Id.*]  He noted that delay in starting physical therapy "which indeed was refused would have slightly reduced the effectiveness of the therapy or perhaps caused the need for more prolonged therapy."  [*Id.* at p. 4]  Regarding the plaintiff's other injuries, Bray remarked that "[t]here is no history of any subjective symptoms to suggest rib fractures related to this injury."  [*Id.* at p. 3]

May asserts a host of federal and state law claims against Puckett in his Second Amended Complaint.  [Record No. 56]  He contends that Puckett committed medical malpractice and negligence under Kentucky law bu refusing to send him to a hospital.  [*Id.* at p. 17]  He further alleges that Puckett exhibited deliberate indifference to his serious medical needs under 42 U.S.C. § 1983 when she refused to send him to a hospital and delayed referring him to a physical therapist.  [Record No. 56, pp. 17-18]  May also claims that the defendant violated his constitutional rights by failing to treat the heart attacks, a dislocated shoulder, and rib fractures suffered during his fall.  [*Id.* at p. 18]

Magistrate Judge Ingram recommends granting Puckett's motion for summary judgment.  [Record No. 111]  The Magistrate Judge states that May's state law claims should be denied because the plaintiff did not provide expert testimony regarding the relevant standard of care, or that Puckett's performance fell below that standard, as required under Kentucky law.  [*Id.* at pp. 6-8]  Magistrate Judge Ingram further recommends that May's deliberate indifference claims should be denied because he has failed to establish that Puckett's treatment was "so 'grossly inadequate'" as to constitute deliberate indifference to the plaintiff's serious

medical needs.  [*Id.* at pp. 8-16 (citing *Phillips v. Tangilang*, 14 F.4th 524, 535 (6th Cir. 2021))]

Finally, Magistrate Judge Ingram explains that, because May has failed to demonstrate that

Puckett committed a constitutional violation in her individual capacity, summary judgment is

warranted regarding May's official capacity claims.  [*Id.* at pp. 16-17]

## II.  Legal Standard

Summary judgment is appropriate when the moving party demonstrates that there is no

genuine dispute regarding any material fact and that the movant is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  To meet this

standard, the movant must show that the nonmoving party has failed to produce evidence to

support an essential element of his claim.  *See Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th

Cir. 2005) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations

omitted)).  Once the moving party has satisfied this burden, the opposing party must set forth

specific facts showing that there is a genuine issue for trial.  *McLaughlin v. Fifth Third Bank,

Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)).

The Court reviews the evidence presented in a light most favorable to the nonmoving

party, drawing all reasonable inferences in his favor.  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he mere existence of a scintilla of

evidence in support of the [nonmovant's] position will be insufficient."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A dispute over a material fact is not "genuine" unless

a reasonable jury could return a verdict for the nonmoving party.  Further, if the nonmoving

party faces a higher burden of proof under applicable substantive law, "he must show in

opposition to the motion for summary judgment that he can produce evidence which, if

believed, will meet the higher standard." *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997).

### III.  Analysis

### 1.  State Law—Medical Negligence

May claims that Puckett committed "medical malpractice and negligence" when she "refused to send [the plaintiff] to a hospital for treatment."  [Record No. 56, p. 17]  More specifically, he contends that the defendant should have sent him to a hospital on June 26, 2020 (the date of his injury), or July 1, 2020 (the date x-rays revealed that he had suffered a fracture). [*Id.*]

Under Kentucky law, the terms "medical malpractice" and "medical negligence" refer to the same concept and are used interchangeably.  *See Blankenship v. Collier*, 302 S.W.3d 665, 673 (Ky. 2010). "Medical negligence is merely a 'branch of the well travelled road of common law negligence.'"  *Earle v. United States*, No. 13-184-DLB-REW, 2016 WL 1417811, at *2 (E.D. Ky. Apr. 11, 2016).  As such, a plaintiff claiming that a medical practitioner was negligent must prove the following elements: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."  *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003)).

Additionally, a plaintiff asserting a medical negligence claim is required to put forth "expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship*, 302 S.W.3d at 670.  Such expert testimony must establish "the standard of skill expected of a reasonably competent medical practitioner," and that the

- 8 -

defendant's alleged breach of that standard "legally caused a medical injury." *Earle*, 2016 WL 1417811, at *2. "To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006) (citing *Turner v. Reynolds*, 559 S.W.2d 740, 741-42 (Ky. Ct. App. 1977)).

May has not met his burden of proving that Puckett committed negligence under Kentucky law because he has not provided any expert testimony in support of his claims. May concedes his dearth of expert testimony, but claims that summary judgment for the defendant should nonetheless be denied because his case falls under the "layman exception" to the expert testimony requirement. [Record No. 100, p. 21] May argues that he does not need to provide expert testimony because his injuries were "obvious enough [that] any layman c[ould] use common sense" in finding that Puckett breached the appropriate standard of care. [*Id.*]

May is correct that expert testimony is not required to establish negligence in "limited factual circumstances." *Andrew*, 203 S.W.3d at 170. Under one such exception, expert testimony is not required when the claim "involves a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care." *Id.* at 170-71. In those cases, such as when a "surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy," negligence may be inferred under the doctrine of *res ipsa loquitur*. *Id.* But here, however, May cannot avail himself of the layman exception because he has not demonstrated that any of Puckett's actions were so obviously incompetent such that a jury could infer negligence.

- 9 -

May asserts that his injuries to his arm and shoulder were "verified by numerous witnesses" and were "serious . . . and obvious to Defendant Puckett." [Record No. 101, p. 21] But his reliance on the severity of his injuries is misplaced. May seems to confuse the need to demonstrate the obviousness of his injury with the obviousness of Puckett's alleged breach of the relevant standard of care. The plaintiff repeatedly claims that his arm was severely injured, but as another judge of this Court has explained, "complaints of persistent pain subsequent to medical care are insufficient to establish an inference of medical malpractice to circumvent the necessity of evidence from an expert." *Sandler v. United States*, No. 11-206-GFVT, 2013 WL 5468493, at *7 (E.D. Ky. Sept. 30, 2013) (citations omitted). Rather, May must demonstrate that the treatment he received was obviously negligent. May cannot meet this test under the facts presented.

In cases where the "layman exception" applies, "it does not take a trained physician to know that something went terribly wrong." *Rose v. United States*, No. 09-104-ART, 2011 WL 839548, at *2 (E.D. Ky. Mar. 7, 2011). By contrast, a jury would require expert testimony to determine whether Puckett's treatment plan—providing medication, a sling, and sending May for x-rays and to an orthopedic specialist—constituted standard procedure for responding to a shoulder injury, or if her actions breached the relevant standard of care. *See id.* (holding that layman exception would not apply to plaintiff's claim that doctor negligently treated a broken arm because treating broken arm "involves questions that are far beyond a layman's ken"); *Andrew*, 203 S.W.3d at 171 (finding that layman exception did not apply to plaintiff's negligence claim regarding physical examination because "the average person [does not know] the appropriate manner in which to conduct a passive range of motion exam on a person with [the plaintiff's spinal condition and other pre-existing injuries").

Similarly, May's claim that Puckett committed malpractice by the delayed referral to an x-ray technician or to an orthopedic specialist does not fall under the layman exception to the expert testimony requirement. *See Robinson v. United States*, No. 18-27-DLB, 2018 WL 4286184, at *3 (E.D. Ky. Sept. 7, 2018) (finding that claim that prison staff's delay in sending plaintiff for an x-ray for ankle injury required medical testimony because "delay-based allegations . . . are fundamentally different from a surgeon leaving a foreign object in a person") (citing *Earle*, 2016 WL 8814363, *6).  As Magistrate Judge Ingram noted, none of Puckett's actions are comparable to a surgeon leaving a foreign object in a patient or operating on the wrong limb.  [Record No. 111, p. 7 (citing *Phillips*, 14 F.4th at 540)] In short, May has not demonstrated that Puckett's treatment falls within one of the "very narrow" exceptions to the expert testimony requirement.  *Rose*, 2011 WL 839548, at *2.

The Court also rejects the plaintiff's argument that his compliance with KRS § 411.167 renders medical testimony unnecessary.  [Record No. 100, p. 22]  The Magistrate Judge correctly found that, while filing a certificate of merit under § 411.167 may be necessary to assert a medical negligence claim, it is not sufficient to overcome the requirement for expert testimony on the subject issues.  [Record No. 111, p. 8]

### 2.  Deliberate Indifference to Serious Medical Needs—42 U.S.C. § 1983

May also alleges that Puckett violated his rights under the Eighth and Fourteenth Amendments to the Constitution by acting with deliberate indifference in treating his serious medical needs under 42 U.S.C. § 1983.  [Record No. 56, pp. 17-18]  Specifically, he contends that Puckett exhibited deliberate indifference when she refused to send him to a hospital, delayed referring him to a physical therapist, deprived him of pain medication, and failed to treat various injuries he suffered.  [Record No. 56, pp. 17-18]

- 11 -

To prevail under 42 U.S.C. § 1983, May must demonstrate that he was deprived of a right secured by the Constitution or laws of the United States and the deprivation was caused by a person acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010).  An employee of a private corporation that has contracted with a prison to provide medical services to inmates acts under color of law for purposes of § 1983.  *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015).

Under the Eighth Amendment's prohibition of "cruel and unusual punishment," prison officials may not "'unnecessarily and wantonly inflict[] pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs."  *Dudley v. Streeval*, No. 20-5291, 2021 WL 1054390, at *3 (6th Cir. Feb. 8, 2021) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)); U.S. Const. amend. VIII. "A claim for denial of adequate medical care has an objective and a subjective component," which a plaintiff must establish by a preponderance of the evidence.  *Dudley*, 2021 WL 1054390, at *3.

To satisfy the objective component, a plaintiff must show that he suffers from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Blackmore*, 390 F.3d at 897 (citation omitted).  But if the plaintiff has received "undisputed care" for his serious medical need, he must also demonstrate that the treatment he received was so "grossly incompetent" as to constitute deliberate indifference.  *Phillips*, 14 F.4th at 536.  A plaintiff alleging inadequate treatment is required to "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so."  *Id.* (citing *Anthony v. Swanson*, 701 F. App'x 460, 463 (6th Cir.

- 12 -

2017)).  As the Sixth Circuit explained, "[t]his medical-evidence requirement makes sense in a world in which the Supreme Court looks to the 'evolving standards of decency' to determine the Eighth Amendment's standards." *Id.* at 535 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"Only if a prisoner establishes this objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Id.*  To satisfy the subjective component, a plaintiff must demonstrate that the offending doctor "cause[d] the harm with a sufficiently culpable mental state—in this context, criminal recklessness." *Id.*  (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).  A defendant acting with criminal recklessness must possess a mental state more culpable than negligence but need not act "for the very purpose of causing harm or with knowledge that harm will result." *Santiago*, 734 F.3d at 591 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005)).  A prison doctor acts with a sufficiently culpable mental state under the subjective component when she "know[s] of the facts that show the serious medical need," "personally conclude[s] that this need exists," and "'consciously disregard[s]' the need" in her response. *Phillips*, 14 F.4th at 535 (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018); *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)).

### i.  Failure to Send the Plaintiff to a Hospital

May alleges that Puckett exhibited deliberate indifference to his serious medical needs by failing to send him to a hospital on June 26, 2020, and July 1, 2020.  [Record No. 56, pp. 17-18]  The plaintiff does not dispute that Puckett treated his shoulder following his accident.  Therefore, he must provide medical evidence demonstrating that Puckett's treatment was "so

grossly 'inadequate' as to 'shock the conscience' or [to] 'be intolerable to fundamental fairness.'" *Phillips*, 14 F.4th at 535.  May has failed to provide any such evidence here.

May concedes his failure to provide medical evidence but again contends that it is not required because the injury to his shoulder was "obvious." [Record No. 101, p. 9]  Magistrate Judge Ingram correctly compared May's argument to the plaintiff's virtually identical claim in *Phillips*.  [Record No. 111, pp. 10-11 (citing 14 F.4th at 537)]  There, the Sixth Circuit rejected a plaintiff's argument that he was not required to present expert testimony "because he had an 'obvious' need." *Id.*  It reasoned that, because the plaintiff received "substantial care" for his injuries, he was required to present additional evidence demonstrating that the care he received was constitutionally inadequate.  Without that additional evidence, his claim regarding the obviousness of his injury was "beside the point." *Id.*

Similarly, May's claim that his injury was obvious does not obviate the requirement for providing evidence regarding the adequacy of Puckett's treatment.  There is no doubt that May was treated extensively for his injuries, as the Magistrate Judge explained in detail in his Recommended Disposition.  [Record No. 111, pp. 11-12]  For example, on the day of his accident, he received a sling, ice packets, pain medication, and was referred to an x-ray technician.  [Record No. 101-3, p. 1]  Immediately following the x-rays, Puckett directed an expedited referral to an orthopedic specialist, continued his current plan of care and medication, and authorized meal delivery to May's cell.  [Record No. 96, pp. 4-7]  During each subsequent visit with May, she responded to the plaintiff's complaints and recommended various forms of treatment, including medication, recommending that May wear a sling, and suggesting that he remain in the medical unit for observation.  [*Id.* at pp. 8, 9, 13, 16, 21]

Notably, the record also demonstrates that May refused to follow a number of Puckett's recommendations.  [Record Nos. 96, p. 3, 100-3, pp. 56, 58, 63]

Because Puckett provided "substantial care" for May's injuries, he must "show more" to succeed on his deliberate indifference claims: namely, that the treatment provided by Puckett was grossly inadequate.  *Phillips*, 14 F.4th at 535.  But even if May had satisfied the objective component of the deliberate indifference test, his claims would nonetheless fail because he has not demonstrated that Puckett acted with the requisite mental state.  As explained previously, a prison official exhibits deliberate indifference when he or she "act[s] with a conscious disregard to a substantial risk of serious harm to the prisoner."  *Love v. Taft*, 30 F. App'x 336, 337 (6th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "[M]ere negligence or malpractice is insufficient to establish an Eighth Amendment violation."  *Robbins v. Black*, 351 F. App'x 58, 62 (6th Cir. 2009) (citation omitted).

May has failed to demonstrate that Puckett acted recklessly when she treated his injuries.  [Record No. 111, p. 10]  As Magistrate Judge Ingram correctly states, because the plaintiff has not demonstrated that Puckett was negligent, his claims requiring a higher level of culpability will necessarily fail.  *See Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error.") (citation omitted); *Blackmore*, 390 F.3d at 896 ("[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.").

### ii.  Delayed Referral to Physical Therapy

Next, May claims that Puckett acted with deliberate indifference when she "refus[ed] to provide [the plaintiff] with physical therapy."  [Record No. 56, p. 10]  Puckett argues that

May should be prevented from asserting this claim because he did not exhaust his administrative remedies, as is required under the Prison Litigation Reform Act of 1995 ("PLRA"). [Record No. 97, pp. 6-7]  Specifically, she contends that May cannot assert a claim regarding her allegedly delayed referral because he "never filed a grievance regarding the alleged delay in physical therapy."  [*Id.*]  May argues that his failure to exhaust administrative remedies should be excused because he was told that he needed to wait six months before filing another grievance related to his shoulder injury.  [Record No. 101, p. 13]

Where a defendant claims that a prisoner failed to exhaust administrative remedies in a PLRA claim, the burden shifts to the prisoner to demonstrate proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 211 (2007).  It would appear that May's allegation that he was told not to file a separate grievance is insufficient to meet his burden of proving exhaustion of administrative remedies.  However, because summary judgment is appropriate on other grounds, the Court will nonetheless consider the merits of the second deliberate indifference claim.

As the *Phillips* court explained, a plaintiff's claim that doctors were deliberately indifferent in delaying treatment "typically requires expert testimony" to "'establish the detrimental effect of the delay.'"  14 F.4th at 538 (citing *Santiago*, 734 F.3d at 590).  Here, Dr. Primm recommended that May receive physical therapy on September 29, 2020, and Puckett referred May for physical therapy on October 12, 2020.  [Record Nos. 96, p. 64, 98-10, p. 7]  May has not provided any medical evidence demonstrating that the 13-day delay constitutes "grossly inadequate" treatment, or that the delay harmed him.

As the only evidence in support of this claim, May provides his own account of his conversation with "LAC Officer Sgt. Roger Roberts," in which the officer allegedly stated that May should have been taken to physical therapy sooner.  [*Id.*]  But this is insufficient for

several reasons.  First, May does not contend that the LAC official is a medical professional or otherwise qualified to provide medical testimony.  Second, even if the officer was a qualified expert, his purported statement that treatment was delayed does not address whether such delay harmed May.

In fact, the only relevant medical evidence suggests that any delay in referring May to physical therapy did *not* constitute grossly inadequate treatment.  [*See* Record No. 111, p. 14.] Dr. Bray reported that May's treatment "does not seem delayed; however, it appears physical therapy was not followed up on because of [the plaintiff's] recalcitrance." [Record No. 98-12, p. 3]  Dr. Bray also stated that a delay in starting physical therapy "would have slightly reduced the effectiveness of the therapy or perhaps would have caused the need for more prolonged therapy." [Record No. 98-12, p. 4]  As the Magistrate Judge correctly noted, while Dr. Bray stated that the delay *could* have resulted in a need for longer treatment, he does not claim that it ultimately caused the plaintiff harm.

Moreover, May cannot rely on any delay in treatment resulting from his own refusal to participate in physical therapy on November 5, 2020.  [Record No. 96, p. 65]  He contends that the form indicating that he refused to participate in physical therapy is fabricated, but he has not provided any evidence, aside from his own allegations, to support this assertion.  [Record No. 101, p. 17]

### iii.  Failure to Treat Alleged Heart Attacks

May also contends that Puckett was deliberately indifferent in failing to treat two heart attacks he suffered because of his shoulder injury.  [Record No. 56, p. 18]  But again, May has not provided any medical evidence demonstrating that Puckett's actions were grossly inadequate.

After May reported that he was experiencing chest pain, an EKG was administered and he was prescribed two medications for pain relief.  [Record No. 101-28]  The plaintiff has not demonstrated how that treatment was "not just incompetent but grossly so." *Phillips*, 14 F.4th at 536.  And May's claim that the defendants altered his medical records to indicate that he suffered from skeletal pain rather than a heart attack is unavailing regarding this issue.  May has not provided any evidence beyond his own allegations in support of his claim that his report was falsified, which is insufficient to meet his burden at the summary judgment stage.  But even if his claim was substantiated, mislabeling the cause of his chest pain does not demonstrate that the moving defendant acted with deliberate indifference.  May is still required to provide medical evidence indicating that the treatment he received for chest pain was grossly incompetent.

### iv.  Insufficient Pain Medication

May also argues that Puckett was deliberately indifference to his medical needs by refusing to prescribe sufficient pain medication.  [Record No. 56, pp. 10, 14]  However, May has not demonstrated that Puckett deprived him of pain medication or that her actions regarding his prescriptions were otherwise inadequate.

On the day of his accident giving rise to this civil action, Puckett prescribed the plaintiff a 30-day supply of ibuprofen, a 3-day supply of tramadol, and administered a pain injection.  [Record No. 101-3, p. 1]  Puckett ordered additional ibuprofen for the plaintiff on July 14, 2020 and on August 7, 2020.  [Record Nos. 96, pp. 14-15, 20, 101-17, 101-18]  May has not provided any medical evidence suggesting that Puckett's actions were grossly inadequate.  His conclusory allegation that Puckett denied his request for medication after he stated that his dosage of ibuprofen at the time of his accident "did nothing to the pain" is flatly contradicted

by the record, which demonstrates that Puckett prescribed additional pain medication for the plaintiff on three occasions following his accident.  [Record Nos. 101, pp. 19-20, 101-3, p. 1]

### v.  Failure to Treat Dislocated Shoulder

Next, May contends that Puckett's failure to treat his dislocated shoulder constituted deliberate indifference in violation of his rights under the Eighth Amendment.  [Record Nos. 56, p. 17, 101, p. 22]  The Magistrate Judge correctly found that the plaintiff's medical records indicated that he suffered a "fracture involving humeral head with displacement," rather than a dislocation.  [Record No. 111, p. 15] But regardless of the nature of his shoulder injury, May failed to provide any medical evidence suggesting that Puckett's treatment of the injury was grossly inadequate.

### vi.  Failure to Treat Rib Fractures

May claims that Puckett exhibited deliberate indifference when she failed to adequately treat his fractured ribs.  [Record No. 56, p. 18]  It is doubtful that the plaintiff suffered any additional fractures after he fell out of his chair on June 26, 2020, or that his previous fractures constituted a serious medical need at the time of his accident.  Indeed, the evidence suggests that, although the plaintiff had previously fractured multiple ribs, none of those fractures resulted from his accident in June 2020.  [Record Nos. 96, p. 69, 100-1, pp. 217-20, 100-3, p. 2, 101-14, p. 5]  And as Bray stated in his report, "there is no history of any subjective symptoms to suggest rib fractures related to [the instant] injury."  [Record No. 98-12, p. 3] But even if May's ribs suffered further injury as a result of his fall, he has not provided medical evidence to demonstrate that Puckett failed to adequately treat his injuries.

Dr. Primm found that May's x-rays showed healing rib fractures, but neither Dr. Primm nor any of the other medical providers treating the plaintiff recommended any further treatment

for those fractures.  [Record No. 111, p. 16]  Thus, May has not satisfied the objective component of the deliberate indifference test.

### 3. Official Capacity Claims

In his Second Amended Complaint, May asserts claims against Puckett in both her individual and official capacities.  [Record No. 56, p. 17]  He asserts that Puckett "acted under color of state law" because she was "employed by WellPath Medical to provide medical treatment to inmates housed in state prisons in the Commonwealth of Kentucky through a contract with the Commonwealth of Kentucky." [*Id.* at p. 11]  "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  To demonstrate liability regarding an official capacity claim, a plaintiff must "establish that one of [the entity's] customs or policies caused the underlying Eighth Amendment violation." *Phillips*, 14 F.4th at 537.

Wellpath, Puckett's employer, is subject to liability under Section 1983 because it contracted with LAC to provide medical services to inmates.  *See West v. Atkins*, 487 U.S. 42, 56 (1988) (finding that medical provider contracted to provide medical care to prisoners is a state actor for § 1983 purposes).  However, even if Wellpath may be held liable for purposes of the plaintiff's section 1983 claims, May's official capacity claims fail because he has not established that Puckett's actions violated his rights under the Constitution.  Because the plaintiff failed to demonstrate that Puckett committed a constitutional violation when acting in her individual capacity, he cannot assert a claim against the defendant in her official capacity. *See Phillips*, 14 F.4th at 537 ("[w]ithout any evidence of such a constitutional violation . . .

[the plaintiff's] claim against this entity must fail too"); *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) ("No constitutional violation means no municipal liability.").

## IV.  Conclusion

May has failed to establish a genuine issue of material fact regarding his state law claims because he has not provided any expert testimony establishing that Puckett breached the applicable standard of care when she treated the plaintiff's injuries.  Further, he has failed to demonstrate that Defendant Puckett acted with deliberate indifference under the Eighth Amendment because he has not provided any medical evidence indicating that her treatment was "grossly inadequate."  Finally, because May has not shown that Puckett violated any of his constitutional rights in her individual capacity, his official capacity claims as well.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Magistrate Judge Ingram's Recommended Disposition [Record No. 111] is **ADOPTED** and **INCORPORATED** here by reference.

2.      Defendant Joyce Puckett's motion for summary judgment [Record No. 97] is **GRANTED**.

Dated: March 23, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky