UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JAMES R. MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-182-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DANIEL AKERS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff James May filed a Second Amended Complaint in this matter on December 14, 2021. [Record No. 56] He contends that the defendants, employees at the Lee Adjustment Center (hereafter, the "LAC"), failed to adequately prevent or respond to his injuries after a chair on which he was sitting collapsed. Specifically, May claims that Warden Daniel Akers, Deputy Warden James Briggs, Troy Wilson, Ralph Clifton, Sergeant Logan Williams, and Krystal Justice (collectively, the "LAC Defendants") violated his rights under state law as well as the First, Eighth and Fourteenth Amendments to the United States Constitution.[1] [Record No. 56] The LAC Defendants have now moved for summary judgment on May's claims. [Record No. 98]

The LAC Defendants' motion was referred to Magistrate Judge Hanly A. Ingram for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Instead,

---

[1]   May's claims against the LAC Defendants are the only remaining issues in this matter. Defendant Joyce Puckett's motion for summary judgment was granted on March 23, 2023. [Record No. 115] Additionally, the Kentucky Department of Corrections ("KDOC") is listed as an "other party" to this action, but the KDOC was not identified as a defendant in May's Second Amended Complaint. [*See* Record Nos. 24, 56.]

- 1 -

Magistrate Judge Ingram issued a Recommended Disposition on March 22, 2023, recommending that the motion for summary judgment be granted. [Record No. 114] The parties did not submit any timely objections to the Magistrate Judge's recommendation.

This Court makes a *de novo* determination of those portions of a magistrate judge's recommendation to which timely objections are made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Despite the absence of objections, the Court has conducted a *de novo* review of the defendants' motion and agrees with Magistrate Judge Ingram that May has not demonstrated that a genuine issue of material fact exists with respect to the claims in his Second Amended Complaint and that the defendants are entitled to entry of judgment on the legal issues presented.

## I. Background

May was sitting on a plastic chair while using a kiosk to order food from the canteen at the LAC on June 26, 2020. The chair collapsed around 6:15 a.m., causing May to fall, landing on his shoulder. He claims that he "heard [his] arm break." [Record No. 100-1, p. 23] Two other inmates, Shane Carroll and Lavon Stivers, were in the room with May but did not witness the accident. [*Id.* at pp. 61-62] May asked Defendant Justice that he be sent to the LAC's medical observation unit ("medical"), but Justice instructed that he report to sick call instead. [*Id.* at p. 60]

The LAC is operated by CoreCivic, Inc. ("CoreCivic") and it contracts with Wellpath Care ("Wellpath") to provide healthcare services to inmates. [Record No. 56, p. 2] May was

treated by Teresa Chaney, an RN with Wellpath, at sick call around 7:00 a.m. on the day of the accident. [Record Nos. 100-1, pp. 226-27, 101-3, p. 1] Chaney referred May to Joyce Puckett, an APRN with Wellpath. [Record No. 101-3, p. 1] Puckett prescribed ibuprofen and tramadol for May and administered an injection with Depo-Medrol for further pain relief. [*Id.*] She referred May for an x-ray "as soon as possible" and told him to "wear [a] sling at all times" and to "use ice packs as directed." [*Id.*]

May also spoke with Williams, a LAC Correctional Officer, on the night of his accident. Williams told May that he would prepare a report about the incident. [Record No. 100-1, pp. 30-31] May claims that Williams stated that he had also fallen from one of the chairs at the LAC and had warned prison officials that "[t]hey need to get rid of these [chairs]." [*Id.* at p. 31] May asserts Williams wrote in his incident report that LAC officials should "move these chairs from this institution." [*Id.*] Williams contends that he submitted a report to his supervisor that night, but the records clerk at the LAC was unable to locate it. [Record Nos. 98-15, 98-20, p. 2]

The plaintiff filed two inmate grievances following the fall. In his first grievance, filed July 1, 2020, May requested $ 30,000.00 from "Core Civic [sic] and the employees who acted [with] deliberate indifferen[ce] by failing to warn [him] about the defective chairs." [Record No. 98-2, p. 2] May's grievance further explained that Williams filed a report describing the accident and told the plaintiff that "he had told the Warden about the bad chairs in the past." [*Id.* at p. 3] Defendant Clifton denied May's request for relief, responding that LAC officials were not negligent in failing to warn May about the chairs because "99.9% of injuries reported involving a chair have been the cause of misuse (standing on them, sitting on the back, leaning on the rear legs, etc.)." [*Id.* at p. 2] May appealed the initial denial to the Warden and noted

- 3 -

that "[t]he response by Ralph Clifton demonstrates that LAC Staff all knew the chairs could collapse." [*Id.* at p. 4]

May filed another grievance on July 2, 2020. [Record No. 98-3] There, he requested $45,000.00 a day "because of the inadequate medical [he was] receiving" for his injuries. [*Id.* at p. 3] May mentioned several LAC officials in the grievance and stated that he "informed Warden Briggs . . . that [he] need[ed] hospital treatment and [has] received none." [*Id.* at p. 4] Both requests for relief were denied. [Record Nos. 98-2, 98-3]

X-rays were taken of May's shoulder on July 1, 2020. [Record No. 96, pp. 4-6] The radiology report provides that May suffered a "fracture involving humeral head with displacement." [*Id.* at p. 6] After reviewing the plaintiff's x-rays, Puckett referred May to Dr. Daniel Primm, an orthopedic specialist at UK Healthcare. [*Id.* at pp. 7, 10-11]

May first visited Dr. Primm on July 7, 2020. Primm reported that he "anticipate[d] nonoperative treatment" for May's injuries and recommended providing a cuff and collar sling. [Record No. 100-3, pp. 61-62] During May's second appointment on August 4, 2020, Dr. Primm reported that May was experienced "continued pain . . . in the left shoulder," but noted that his pain was improving. [*Id.* at pp. 61-63] X-rays of May's shoulder were taken at a third appointment with Dr. Primm on September 29, 2020. [*Id.* at p. 66] The doctor reported "[p]rogressive healing of humeral head fracture involving the greater tuberosity as well as the surgical neck." [Record Nos. 96, p. 22, 100-3, p. 66]

Puckett continued to treat May in the months following his fall. [Record No. 96, pp. 13-17, 21] She granted requests for extended meal delivery, ordered additional pain medication, and recommended continuing May's "current plan of care and medications." [*Id.*] Puckett also referred May to physical therapy "per [o]rtho[pedic] recommendations" on

- 4 -

October 12, 2020.  [Record No. 96, p. 64]  But May refused to participate in the scheduled therapy on November 5, 2020, because he "didn't want to wait."  [*Id.* at p. 65]  May was transferred to Southeast State Correctional Complex ("SSCC") in January 2021, and to the Little Sandy Correctional Complex ("LSCC") in April 2022.  [Record No. 100-1, p. 199]

May asserts a host of claims against the LAC Defendants in his Second Amended Complaint.  [Record No. 56]  First, he claims that Defendants Akers, Briggs, and Justice were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they ignored his requests to be sent to a hospital following his fall.  [Record No. 100-1, pp. 96-99, 132-33]  He further alleges that Akers, Briggs, Wilson, Clifton, and Williams acted with deliberate indifference to his safety by failing to remove the chairs that allegedly caused his fall.  [Record No. 56, p. 19]  He also contends that Akers, Briggs, Wilson, Clifton, and Williams conspired to destroy an incident report that purportedly Williams prepared on the night of his fall.  [*Id.* at pp. 19-20]  Finally, he asserts medical malpractice, negligence, and gross negligence claims against Akers, Briggs, Wilson, Clifton, and Williams.  [*Id.* at pp. 18-19]

Magistrate Judge Ingram recommends granting the LAC Defendants' motion for summary judgment.  [Record No. 114]  He explains that May's claims of deliberate indifference to his safety asserted against Wilson and Clifton and his claims of deliberate indifference to medical needs asserted against Wilson, Clifton and Akers should be dismissed for failure to exhaust administrative remedies.  [*Id.* at pp. 8-14]  The Magistrate Judge further recommends denying May's claims of deliberate indifference to his medical needs because the plaintiff fails to "provide expert testimony to show that he received grossly inadequate care." [*Id.* at pp. 15-17 (citing *Phillips v. Tangilang*, 14 F.4th 524, 535 (6th Cir. 2021))]  Similarly,

the Magistrate Judge recommends denying the plaintiff's claims of medical malpractice because May has not offered expert testimony to establish the applicable standard of care, as Kentucky law requires. [*Id.* at pp. 17-19]

The Magistrate Judge concludes that the defendants are entitled to summary judgment on May's negligence and gross negligence claims because he fails to show that the risk of harm from the subject chairs was reasonably foreseeable. [*Id.* at pp. 19-26] Next, the plaintiff's claims of deliberate indifference to safety fail because May has not established that the defendants acted with a sufficiently culpable mental state. [*Id.* at pp. 26-27] And May's civil conspiracy claim fails because he has not established that two or more persons conspired together, or that the actions of the alleged co-conspirators caused him harm. [*Id.* at pp. 27-29] Finally, the Magistrate Judge explains that, because May failed to demonstrate that any of the defendants violated his constitutional rights in their individual capacities, summary judgment is warranted regarding May's official capacity claims. [*Id.* at pp. 29-30]

## II. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). To meet that standard, a movant must show that the nonmoving party has failed to produce evidence to support an essential element of his claim. *See Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citations omitted)). Once the moving party has satisfied this burden, the opposing party must set forth specific

facts showing that there is a genuine issue for trial. *McLaughlin v. Fifth Third Bank, Inc.*, 772 F. App'x 300, 302 (6th Cir. 2019) (citing Fed. R. Civ. P. 56(e)).

The Court reviews the evidence presented in a light most favorable to the nonmoving party, drawing all reasonable inferences in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, if the nonmoving party faces a higher burden of proof under applicable substantive law, "he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard." *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997).

### III.  Discussion

### 1.  Dismiss Defendant Justice

May moved to dismiss the claims against Justice in his response to the LAC Defendants' motion for summary judgment.  [Record No. 104, p. 2 n.1]  The defendants do not object to the plaintiff's request.  [Record No. 105, p. 1]

### 2.  Exhaustion of Administrative Remedies

The LAC Defendants contend that May's claims of deliberate indifference asserted against Defendants Akers, Wilson and Clifton should be dismissed for failure to exhaust administrative remedies.  [Record No. 98-1, pp. 5-6]  The Prison Litigation Reform Act of 1995 ("PLRA") provides that a plaintiff challenging prison conditions under federal law must exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  A plaintiff's failure to exhaust administrative remedies is an affirmative defense which the defendants have the

burden of proving by a preponderance of the evidence. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In determining whether an inmate has sufficiently exhausted administrative remedies, courts look to the internal grievance policy at the institution where the plaintiff is incarcerated and ask whether the inmate made "affirmative efforts to comply with the administrative procedures." *Napier v. Laurel Cnty.*, 636 F.3d 218, 224 (6th Cir. 2011); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("To exhaust his administrative remedies, a prisoner must adhere to the institutional grievance policy, including any time limitations."). "Summary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher*, 639 F.3d at 240 (citing Fed. R. Civ. P. 56(a)).

The LAC Defendants provided the prison's policy governing inmate grievances in support of their motion for summary judgment. [Record No. 98-4] The policy provides detailed guidance for filing a grievance. It notes that an inmate must "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during step 1." [*Id.* at p. 5]

May's inmate grievance regarding the defendant's alleged failure to warn of defective chairs, filed July 1, 2020, refers to "CoreCivic staff," Williams, "the Warden," and a nurse who is not a party to this action. [Record No. 98-2, pp. 2-3] After Clifton denied his initial request, May appealed the decision to the Warden and identified Clifton in his appeal. [*Id.* at pp. 5-6]

- 8 -

May's references to Williams and the Warden satisfy the LAC's grievance policy and are sufficient for exhaustion purposes.  [*See* Record No. 114, pp. 12-13.]  However, the Magistrate Judge correctly recommends that May's deliberate indifference to safety claims should be dismissed as to Wilson and Clifton.  The plaintiff's identification of "Core Civic staff" in his grievance is too broad to meet the LAC's requirement that May "identify all individuals" involved in the incident described in his report.  [Record No. 98-4, p. 5]  *See Hall v. Warren*, 443 F. App'x  99, 106 (6th Cir. 2011) ("[A] plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures.").  Referring to "Core Civic staff" is insufficient because May failed to indicate which employees could have known about the allegedly defective chairs at the LAC, thereby preventing the prison from adequately responding to May's complaints.

Next, May's reference to Clifton in his appeal to the Warden does not satisfy the LAC's requirement that all individuals be named in the initial step of the grievance process.  *See McDonald v. Green River Corr. Complex*, No. 4: 17-CV-P138-JHM, 2020 WL 5237520, at *2-3 (W.D. Ky. Sept. 2, 2020) (granting summary judgment to defendant for failure to exhaust administrative remedies when plaintiff did not mention defendant until the fourth step of the grievance process).

May's second inmate grievance, filed July 2, 2020, corresponds to his claims that the defendants were deliberately indifferent to his serious medical needs.  [Record No. 98-3]  May identifies four correctional officers at the LAC in his complaint, including Justice.  [*Id.* at pp. 3-4]  He also asserts that he "informed Warden Briggs . . . that [he] need[ed] hospital treatment and [has] received none."  [*Id.* at p. 4]  Because May makes no mention of Defendants Wilson,

- 9 -

Clifton or Akers in his July 2 grievance, his deliberate indifference claims stemming from that grievance will be dismissed regarding those defendants.

May recognizes that he failed to properly identify the defendants in his grievances but advances two arguments claiming that the Court should excuse his partial compliance with LAC policy.  But neither argument has merit.  His claim that the defendants waived the exhaustion defense when they failed to raise the issue at the time he filed the grievances fails. [Record No. 104, pp. 5-6]  May cites *Reed-Bey v. Pramstaller* in support of his argument; however, as Magistrate Judge Ingram notes, that case is distinguishable.  [Record No. 114, p. 11 (citing 603 F.3d 322 (6th Cir. 2010)]

In *Reed-Bey*, the Sixth Circuit held that prison officials waived any exhaustion argument when, after the inmate had failed to specifically identify anyone in his grievance, the officials responded to the grievance on the merits.  603 F.3d at 325.  By contrast, May identified several individuals in his grievance, which would reasonably lead LAC officials to assume that only the named individuals were involved in the subject incident.  *See Luther*, 2019 WL 511795, at *7-8 (noting that "*Reed-Bey* is the exception to the [exhaustion] requirement—not the rule," and finding that because the plaintiff "named a specific individual [in his grievance], *Reed-Bey* is not applicable")  The plaintiff's partial compliance with LAC's grievance procedural requirements removes his case from *Reed-Bey*'s ambit.

May's next argument that his partial exhaustion should be excused because he filed a lawsuit with respect to his unexhausted claims is similarly unavailing.  [Record No. 104, p. 6] May cites to *Does 8-10 v. Snyder*, in which the Sixth Circuit excused the plaintiffs' failure to comply with the prison's internal grievance process because they utilized a separate process for filing their claims under the Prison Rape Elimination Act ("PREA"). 945 F.3d 951, 955-

56 (6th Cir. 2019).  The court held that, because the prison treated the plaintiffs' grievances as valid claims under the PREA, prison officials were precluded from arguing that those same claims were procedurally barred under the PLRA.  *Id.* at 961-62.

Here, unlike *Snyder*, the LAC Defendants did not "fail[] to enforce their own procedural rules" by "channel[ing] the plaintiff['s] grievance[] through" a separate process.  *Id.* at 962. Instead, the defendants only recognized May's initial grievances as compliant with LAC policy because he identified several prison officials by name, as explained above, not because his grievances were validated when he filed this action.  The fact that the LAC Defendants responded to May's lawsuit does not suggest that they excused his noncompliance with the prison's internal grievance policy.  The plaintiff failed to exhaust available administrative remedies with respect to his claims that Akers, Wilson, and Clifton were deliberately indifferent to his medical needs.

### 3.  Deliberate Indifference to Serious Medical Needs—42 U.S.C. § 1983

May does not name any of the LAC Defendants in his claim of deliberate indifference to medical needs.  However, he contends in his July 2, 2020, grievance that Briggs denied his request for medical care, and he notes in his deposition that Akers and Briggs ignored his repeated requests for medical treatment following his fall.  [Record Nos. 98-3, 100-1, pp. 96-99, 132-33]  Construing the May's pleadings leniently, he has asserted a claim of deliberate indifference to medical needs against Akers and Briggs.

The Eighth Amendment's prohibition of "cruel and unusual punishment" prevents prison officials from "acting with 'deliberate indifference' toward [an] inmate's serious medical needs."  *Dudley v. Streeval*, No. 20-5291, 2021 WL 1054390, at *3 (6th Cir. Feb. 8, 2021) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)); U.S. Const.

amend. VIII.  A prisoner claiming that officials deprived him of adequate healthcare must establish an objective and a subjective component by a preponderance of the evidence.

A prisoner must demonstrate an objectively serious medical need to satisfy the objective component of his Eighth Amendment claim.  *Blackmore*, 390 F.3d at 897 (citation omitted).  However, if the prisoner has received "undisputed care" for his condition, he must also present medical evidence demonstrating that the treatment he received was "grossly inadequate."  *Phillips*, 14 F.4th at 536.  "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care."  *Spears v. Ruth*, 589 F.3d 531, 539 (6th Cir. 2009).

Because May failed to properly identify Akers in his inmate grievance, any claim of deliberate indifference to medical needs asserted against the Warden will be dismissed on procedural grounds.  But even if he had exhausted his claims against Akers, summary judgment would be granted nonetheless because May has failed to satisfy the objective component of his Eighth Amendment claim against Akers and Briggs.  May does not dispute that he received medical care after falling from his chair.  As such, he is required to offer expert testimony demonstrating that the care he received was grossly incompetent.   The failure to submit medical evidence is fatal to this claim.

Moreover, as Magistrate Judge Ingram correctly indicates, Briggs and Akers are not medical providers and did not act with deliberate indifference.   Instead, they reasonably trusted that May received proper care from LAC medical staff following his fall. [Record No. 114, p. 17]  Puckett adequately treated May's injuries by prescribing pain medication, recommending that he wear a sling, and referring him to Dr. Primm.  Because May did not provide any evidence establishing that the treatment he received was grossly inadequate, the

plaintiff's deliberate indifference claims asserted against Akers and Briggs fail as a matter of law.

### 4. Medical Malpractice

Under Kentucky law, a plaintiff asserting a claim of medical malpractice must establish "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003)).  A plaintiff alleging medical malpractice is further required to "introduce evidence, in the form of expert testimony, demonstrating . . . the standard of care recognized by the medical community as applicable to the particular defendant." *Sandler v. United States*, No. 6:11-CV-206-GFVT, 2013 WL 5468493, at *6 (E.D. Ky. Sept. 30, 2013).  Summary judgment is proper if a plaintiff fails to produce expert testimony to establish the relevant standard of care.  *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006).

The medical negligence claims in May's Second Amended Complaint do not refer to the LAC Defendants, and he does not mention that he is asserting medical malpractice claims against prison officials in his response to their summary judgment motion.  That said, to the extent he alleges that the LAC Defendants committed medical malpractice, any such claims fail because May has not provided any expert testimony to establish the relevant standard of care.  Magistrate Judge Ingram, therefore, correctly concludes that the LAC Defendants are entitled to summary judgment on any medical malpractice claims asserted by May.

## 5. Negligence and Gross Negligence

May claims that the LAC Defendants were negligent by failing to remove the plastic chairs at the prison, despite "having knowledge [that they] . . . would collapse without warning and cause injury to inmates and staff." [Record No. 56, pp. 18-19] A plaintiff asserting a claim of ordinary negligence must establish the same four elements required to establish medical negligence; namely, that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, that the breach caused the plaintiff's injury, and that the plaintiff suffered damages as a result. *Wright*, 381 S.W.3d at 213. May's negligence claims fail because he has not established that the LAC Defendants breached a duty to protect him from reasonably foreseeable harm or that their conduct led to his injury.

A prison official has a duty to "exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006). Once a duty has been established, a plaintiff must demonstrate that the defendant failed to protect him from a foreseeable risk—that is, a risk that could be anticipated "based on what the tortfeasor knew or should have known at the time of the accident rather than what might be deemed foreseeable in hindsight." *Stiens v. Bausch & Lomb Inc.*, 626 S.W.3d 191, 200 (Ky. Ct. App. 2020).

Additionally, a plaintiff claiming negligence must establish that the defendant's failure to protect him from foreseeable harm caused his injury. Under Kentucky law, a plaintiff in a negligence action is required to establish causation in fact and proximate causation. *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). Causation in fact, or 'but-for' causation, "requires the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty

(negligence) and the plaintiff's damages such that the event would not have occurred "but for" the defendant's negligent or wrongful conduct in breach of a duty." *Id.* at 730. Proximate causation "captures the notion that, although conduct in breach of an established duty may be an actual but-for cause of the plaintiff's damages, it is nevertheless too attenuated from the damages in time, place, or foreseeability to reasonably impose liability upon the defendant." *Id.* at 731.

Because May was incarcerated at the LAC at the time the chair allegedly collapsed, the LAC Defendants had a duty to exercise ordinary care to protect him from reasonably foreseeable danger. *Rowan Cnty.*, 201 S.W.3d at 479. However, May has not established that the chairs posed a risk of injury that prison officials could have reasonably anticipated, such that the LAC Defendants did not exercise ordinary care in failing to inspect or remove them. Moreover, May has not demonstrated that the LAC Defendants' conduct regarding the chairs proximately caused his chair to collapse.

May claims that his chair collapsed because it was defective, but he provides no expert testimony in support of this claim. His failure to provide expert testimony is fatal to his negligence claims at the summary judgment stage. *See, e.g., Snider v. Wal-Mart Stores, Inc.*, No. 1:14-CV-00097-GNS-HBB, 2016 WL 319878, at *4 (W.D. Ky. Jan. 26, 2016) (granting summary judgment to defendant when plaintiff failed to provide expert support demonstrating that product was defective). However, even the lay evidence May offers fails to create a genuine issue of material fact regarding the LAC Defendants' alleged negligence.

May submitted affidavits from eight LAC inmates who claimed that they witnessed other inmates fall out of chairs at the prison, or that they themselves fell out of prison chairs. [*See* Record No. 104, pp. 8-9.] But as Magistrate Judge Ingram notes, May cannot establish

- 15 -

that the defendants were negligent through lay testimony alone because the chair's claimed defect was not "so apparent that a layperson would recognize it."  [Record No. 114, p. 22 (citing *Leveline v. Schindler Elevator Corp.*, No. 21-33-DLB-CJS, 2022 WL 4474247, at *2 (E.D. Ky. Sept. 26, 2022))]  Additionally, May provided an affidavit from one inmate who was present at the time of his accident, but that inmate does not state that he observed what caused the collapse, or even that he saw it occur.  [Record No. 104-3, p. 2]  May has not provided any evidence establishing that his chair collapsed due to a defect, or that the chair's defect posed a reasonably foreseeable risk of which the LAC Defendants should have been aware.

By contrast, the LAC Defendants have submitted expert testimony indicating that May's chair collapsed not because of a defect, but due to misuse.  [Record No. 98-18]  An expert report from Dr. Russell Dunn concludes that the "root cause of failure of the subject chair is overload failure from unintended use where the vast majority of the stress on the subject chair was exerted on the left rear leg and was clearly not evenly distributed on all four legs."  [*Id.* at p. 15]  Dr. Dunn's report establishes that the defendants were not negligent for failing to remove May's chair, and May has not provided any evidence to contradict or undermine this conclusion.

Moreover, the plaintiff's attempts to challenge Dr. Dunn's report are unavailing.  [*See* Record No. 114, pp. 23-25.]  Dr. Dunn's report is reliable because he accounted for the age of the chair, noted that any damage to the chair that occurred after May's accident did not affect the chair leg that collapsed, and verified that the chair he tested was the same chair that May used at the time of the fall.  Dr. Dunn analyzed the exact chair that May used and concluded that it did not collapse due to a defective condition.  May's failure to present any evidence to

the contrary warrants granting summary judgment to the defendants regarding May's negligence claims.

May also argues that the LAC Defendants were negligence as a matter of law when they failed to comply with Kentucky Department of Corrections Policy and Procedure 8.6 which requires prison staff to "complete a draft incident report" at the time an incident occurs. [*See* Record No. 104-4.]   But even if the LAC Defendants violated Department of Corrections policy by failing to create reports when other inmates fell out of prison chairs, the plaintiff has not established how their failure to report other chair-related incidents was "a substantial factor in causing" his injury.  [*See* Record No. 114, p. 25 (citing *Britton v. Wooten*, 817 S.W.2d 443, 447 (Ky. 1991)).]   The plaintiff has not established that the defendants' alleged failure to comply with reporting requirements were negligent *per se*.

Finally, the Magistrate Judge correctly concludes that, because May cannot establish that the LAC Defendants were negligent, his gross negligence claims necessarily fail.   A defendant acting with gross negligence exhibits "a wanton or reckless disregard for the lives, safety, or property of others."  *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016) (quoting *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998)).  As noted, May has not established that the LAC Defendants committed acts of negligence when they failed to inspect or remove the chairs at the prison, which requires a less culpable state of mind than a claim that they acted with reckless disregard.   Because May cannot establish that the defendants acted with a sufficiently culpable *mens rea*, summary judgment for the LAC Defendants as to the plaintiff's gross negligence claims is proper.

### 6.  Deliberate Indifference to Safety—42 U.S.C. § 1983

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A plaintiff asserting a claim of deliberate indifference to safety must satisfy an objective and a subjective component.  To show that a deprivation was "sufficiently serious" under the objective component, the plaintiff must establish "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* at p. 834 (citation omitted).  To satisfy the subjective component, he must demonstrate that the official acted with deliberate indifference, or that he "knew of and disregarded an excessive risk to inmate health or safety."  *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 837).

May contends that the LAC Defendants were deliberately indifferent to his safety when, after hearing that "numerous inmates and some staff had been injured by the plastic prison chairs when the legs of the chairs would collapse without warning," they nonetheless failed to remove the chairs from the institution.  [Record No. 56, p. 19]  As discussed previously, summary judgment is proper for Wilson and Clifton because May did not exhaust administrative remedies with respect to his claims asserted against those defendants.  But even if May had named all the LAC Defendants in his grievance, his claims would nonetheless fail because he cannot demonstrate that the defendants acted with a sufficiently culpable mental state.  As Magistrate Judge Ingram notes, May's failure to establish that the defendants were negligent precludes him from asserting that they acted with deliberate indifference, which "describes a state of mind more blameworthy than negligence."  [Record No. 114, p. 27 (citing *Farmer*, 511 U.S. at 835)]

- 18 -

## 7.  Civil Conspiracy—42 U.S.C. § 1983

A civil conspiracy under § 1983 is defined as "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  A plaintiff asserting a civil conspiracy claim must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed."  *Revis*, 489 F.3d at 290.

May alleges that Defendants Akers, Briggs, Wilson, Williams, and Clifton violated his right to access the courts when they "conspired with one another to destroy the report written by [Williams] on June 26, 2020."  [Record No. 56, pp. 19-20]  This claim fails because May has not demonstrated that two or more of the defendants conspired together or that their alleged conspiracy injured him.

The LAC Defendants agree that Williams wrote a report following May's incident and that the report is no longer available.  [Record Nos. 98-1, pp. 31-32, 98-15, p. 3]  They claim, however, that the loss of the report was not intentional and that May has provided no proof, beyond his own speculative assertions, that it was destroyed.  [Record No. 98-1, p. 32]  May provides his own affidavit in response, claiming that Williams told him that he believed "the administration got rid of [Williams'] written report because 'it hung [the Warden] out to dry.'"  [Record No. 104-2, p. 1]

Assuming that May's account of his conversation is true, May has nonetheless failed to establish a conspiracy.  Williams' lone comment to May neither establishes a single agreement between multiple defendants nor identifies which defendants allegedly participated in destroying the report.  [Record No. 114, pp. 28-29]

And even if May had demonstrated that two or more defendants conspired to destroy Williams' report, he fails to show how the loss of the report deprived him of a constitutional right.  May claims that the report indicated that prison officials should have known that the chairs at the LAC were faulty, but that information does not bolster his claims of deliberate indifference.  [Record No. 104, pp. 20-22]  As explained previously, the LAC Defendants' knowledge that certain chairs were defective does not render them negligent for failing to inspect or remove the chair that May used on the day of his accident.  Because the report has no bearing on the defendants' culpability, its loss did not injure May.

### 8.  Official Capacity Claims—42 U.S.C. § 1983

"While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent."  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  To succeed, a plaintiff asserting against a government official in his or her official capacity must "(1) identify the [employing entity's] policy or custom, (2) connect the policy to the [entity], and (3) show that his particular injury was incurred due to execution of that policy."  *Id.* at p. 815 (citing *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993)).

Any official capacity claims asserted by May fail as a matter of law because he has not established that his injury resulted from the defendants' execution of CoreCivic policy.  The plaintiff's Second Amended Complaint does not identify CoreCivic as a defendant or assert that the LAC Defendants were acting pursuant to CoreCivic's policies or customs at the time of the alleged constitutional violations.  Indeed, as the LAC Defendants note, May admitted in

his deposition that the LAC Defendants' actions "didn't violate any [CoreCivic] policy." [Record No. 98-1, p. 33 (citing Record No. 100-2, p. 106)]

But even if May had connected the defendants' actions to a CoreCivic policy, his official capacity claims would fail because he has not demonstrated that the defendants committed a constitutional violation. *See Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) ("No constitutional violation means no municipal liability.").

## IV.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      United States Magistrate Judge Ingram's Recommended Disposition [Record No. 114] is **ADOPTED** and **INCORPORATED** here by reference.

2.      Plaintiff James May's unopposed request to dismiss all claims asserted against Defendant Krystal Justice [Record No. 104] is **GRANTED**.

3.      The defendants' motion for summary judgment [Record No. 98] is **GRANTED**.

4.      This action is **DISMISSED** and **STRICKEN** from the docket.

Dated: April 20, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky